[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11276

_____

BIA No. A74-697-949

JORGE L. FRECH,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(July 2, 2007)**

Before BARKETT and KRAVITCH, Circuit Judges, and TRAGER,[*] District
Judge.

BARKETT, Circuit Judge:

    Jorge L. Frech seeks review of the Bureau of Immigration Appeals' ("BIA")

_____

[*] Honorable David G. Trager, United States District Judge for the Eastern District of New
York, sitting by designation.

order affirming the Immigration Judge's ("IJ") rulings denying his motion to change venue and his application for adjustment of status pursuant to Section 202 of the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), Pub. L. No. 105-100, 111 Stat. 2193 (1997), amended by Pub. L. No. 105-139, 111 Stat. 2644 (December 2, 1997). We deny the petition.

## 1. Background

Frech, a Nicaraguan national, entered the United States in June 1995, and in 1996, was charged in Miami with being deportable for overstaying a visa. Frech and his wife applied for asylum, withholding of removal and, in the alternative, voluntary departure. The IJ denied all relief, finding that Frech had provided false statements on the asylum application. Frech appealed to the BIA. He and his wife then relocated to Houston, where they started a bakery business.

In 1997, while Frech's appeal to the BIA was pending, Congress enacted NACARA. NACARA mandated that the Attorney General legalize the status of Nicaraguan and Cuban nationals unlawfully present in the United States if they (1) had been physically present in the United States for a continuous period beginning no later than December 1, 1995 through the date of the application for relief; (2) applied for adjustment of status before April 1, 2000; (3) were otherwise eligible to receive an immigrant visa; and (4) were otherwise admissible to the United States

2

for permanent residence.[1]

In 1998, the BIA remanded Frech's case to allow him and his wife to apply for adjustment of status under NACARA.  Following the remand, <u>Mrs.</u> Frech, only, was granted relief and adjusted status to that of lawful permanent resident.  The IJ denied NACARA relief to <u>Mr.</u> Frech, however, on the basis that he lacked good moral character based on false statements he had made in his asylum application.  Frech again appealed to the BIA.

The BIA remanded the case to the IJ in Miami for a second time, finding that the IJ erred because there is no good moral character requirement for adjustment of status under NACARA.  On remand, the IJ nevertheless again denied adjustment of status, this time finding that Frech was generally inadmissible for having made false statements in the asylum application and having previously been convicted for a crime of moral turpitude ("lewd and lascivious behavior"), and that in order to prevail on his NACARA application, he would therefore have to obtain "waivers of inadmissibility" under the Immigration and Nationality Act ("INA").[2]  In order

---

[1] NACARA § 202 provides that the Attorney General <u>shall</u> adjust the status of any alien who meets these criteria.

[2] The INA authorizes the Attorney General to waive an alien's inadmissibility based on various circumstances if the denial of admission would result in extreme hardship to the applicant's citizen or lawful permanent resident spouse.  Specifically, under Section 212(i), the Attorney General may waive inadmissibility based on fraud or willful misrepresentation if he finds that the denial of admission "would result in extreme hardship to the citizen or lawfully resident spouse or parent of such an alien."  8 U.S.C. § 1182(i).  Similarly, under Section 212(h), the Attorney General may waive inadmissibility based on a crime of moral turpitude if he

to obtain the requisite waivers, the evidentiary burden would be on Frech to show that his case merited the favorable exercise of discretion, that the denial of his admission would result in extreme hardship to his spouse, and that this hardship outweighed the circumstances that would otherwise render him ineligible for admission.

In 2003, at a preliminary hearing before the IJ in Miami, Frech appeared pro se and asked for a change of venue to Houston. By that time, Frech had been living in Houston for more than six years. Both his residence and business were in Houston. Frech did not have an attorney in Miami, and all his witnesses were located in Houston. There is no indication from the record that the INS—who would present no witnesses at the hearing—opposed the request. Nevertheless, the IJ denied the motion. The only stated rationale for the denial was that the IJ believed that Frech's prior testimony in the asylum case "may have relevance in the current proceeding."[3]

In 2004, Frech again requested a change in venue, this time through counsel he had obtained in Houston. The IJ again denied the request, stating that he had

_____

determines that the "denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." Id. § 1182(h).

[3] The IJ made no mention of the factors he was required to balance under BIA precedent for a change of venue determination, such as administrative convenience, expeditious treatment of the case, location of witnesses, cost of transporting witnesses or evidence to a new location, and prejudice to the INS. See Matter of Rahman, 20 I. & N. Dec. 480 (BIA 1992).

4

already established a filing schedule for the case (including for the submission of evidence), and that Frech's arrest and conviction records were located in Miami. A few weeks before the scheduled hearing, Frech's Texas counsel moved to withdraw, asserting that Frech had discharged counsel and filed a state bar complaint against the firm. The motion was granted.

At the 2004 merits hearing on his applications, Frech appeared pro se. The IJ determined that Frech was statutorily eligible to seek adjustment of status under NACARA, but denied relief after concluding that the hardship to Frech and his wife did not "rise to the level of extreme hardship required by the statute to overcome the serious misrepresentations made to the Court and to [sic] the serious nature of [Frech's] criminal history." The IJ's determination included the observation that in addition to the hardships both Mr. and Mrs. Frech would face if Mr. Frech were denied relief, Mrs. Frech (an Israeli national) did not have any relatives in Nicaragua and did not speak Spanish fluently. The BIA affirmed.

In this petition for review, Frech claims that he was denied due process as a result of the denial of a change in venue, and that the IJ failed to apply the correct legal standard in adjudicating his application for waivers of inadmissibility. The Attorney General asserts that the petition is due to be dismissed for lack of

jurisdiction.[4]  We review subject matter jurisdiction <u>de novo</u>.  <u>Brooks v. Ashcroft</u>, 283 F.3d 1268, 1272 (11th Cir.2002).

## 2. Jurisdiction

NACARA § 202(f) provides that "[a] determination by the Attorney General as to whether the status of any alien should be adjusted under this section is final and shall not be subject to review by any court."  NACARA § 202(f); <u>Centeno v. U.S. Att'y Gen.</u>, 441 F.3d 904, 905 (11th Cir. 2006); <u>Ortega v. U.S. Att'y Gen.</u>, 416 F.3d 1348, 1350 (11th Cir. 2005).  Accordingly, we lack jurisdiction to review a determination as to whether an applicant's status should be adjusted under NACARA.

Nevertheless, as the Government concedes, we retain jurisdiction to review constitutional claims arising from the denial of relief under NACARA because nothing in § 202(f) expressly precludes it.  <u>See</u> <u>Demore v. Kim</u>, 538 U.S. 510, 517 (2003) ("where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear") (citation omitted).  In <u>Alexis v. U.S. Att'y Gen.</u>, 431 F.3d 1291 (11th Cir. 2005), we held that although an identical jurisdiction-limiting provision in the Haitian Refugee Immigration Fairness Act of

---

[4] At oral argument, the Attorney General also argued that Frech's procedural due process claims must be dismissed because they were not administratively exhausted.  <u>See</u> <u>Amaya-Artunduaga v. U.S. Att'y Gen.</u>, 463 F.3d 1247 (11th Cir. 2006).  We find that this argument has no merit because Frech raised the procedural due process claims in his brief to the BIA.

1998, Pub. L. No. 105-277, 112 Stat. 2681, precluded review of the <u>adjustment</u> <u>decision</u> under that statute, we nevertheless retained jurisdiction to review "substantial constitutional challenges" to it.[5] 431 F.3d at 1294-95 (citing <u>Gonzalez-Oropeza v. U.S. Att'y Gen.</u>, 321 F.3d 1331, 1333 (11th Cir.2003)). Thus, we have jurisdiction to consider constitutional claims arising under NACARA.

We also retain jurisdiction to consider constitutional claims and questions of law under the INA, including those arising from the denial of waivers of inadmissibility.[6] <u>See</u> 8 U.S.C. § 1252(a)(2)(D) (courts retain jurisdiction to review "constitutional claims or questions of law" under INA); <u>Camacho-Salinas v. U.S.</u> <u>Att'y Gen.</u>, 460 F.3d 1343, 1347 (11th Cir. 2006) (court retains jurisdiction to review constitutional claims and questions of law related to the denial of waiver of inadmissibility).[7]

In this petition, Frech asserts a substantial constitutional challenge: that the refusal to change venue violated his constitutional right to due process, including

---

[5] A "substantial" constitutional challenge is one that has merit. <u>See</u> <u>Gonzalez-Oropeza</u>, 321 F.3d at 1333 (finding that petitioners' challenge to process by which BIA denied their claims had no merit and therefore did not constitute substantial constitutional challenge).

[6] We note that admissibility of an alien and waivers of inadmissibility are governed by the INA, not NACARA. <u>See</u> 8 U.S.C. §§ 1182 (generally) and 1182(h) and (i).

[7] Although the INA precludes review of the denial of waivers of admissibility <u>on the</u> <u>merits</u>, <u>see</u> 8 U.S.C. § 1252(a)(2)(B), it nevertheless expressly provides for jurisdiction over questions of law. 8 U.S.C. § 1252(a)(2)(D).

the right to counsel and the ability to present evidence on his behalf.[8]  Frech also

raises a question of law: whether the IJ applied the wrong legal standard in

evaluating his application for waivers of inadmissibility.  We therefore have

jurisdiction over these claims.

### 3. Discussion

It is well settled that individuals in deportation proceedings are entitled to

due process of law under the Fifth Amendment.  Reno v. Flores, 507 U.S. 292, 306

(1993).  Aliens also have a right to be represented by counsel of their choice in

deportation proceedings.  See Cobourne v. I.N.S.,779 F.2d 1564, 1566 (11th Cir.

1986).  The right to counsel in the immigration context is "an integral part of the

procedural due process to which the alien is entitled."  Saakian v. I.N.S., 252 F.3d

21, 24 (1st Cir. 2001) (quoting Batanic v. I.N.S., 12 F.3d 662, 667 (7th Cir. 1993));

see also Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999) ("Aliens

enjoy the right to the effective assistance of counsel in deportation proceedings.")

(citations omitted); Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1273 (noting the

---

[8] We note that the circumstances of this case are markedly different from those presented in Arias v. U.S. Att'y Gen., 482 F.3d 1281 (11th Cir. 2007).  In Arias, we rejected the petitioner's claim that his due process rights were violated by the IJ's failure to properly consider his application for a waiver of inadmissibility, finding that the claim was in fact "an abuse of discretion claim couched in constitutional language."  We observed that although Arias used the words "due process," he cited no specific due process violations and sought to challenge not the process, but the IJ's findings.  Here, by contrast, Frech challenges not the exercise of discretion, but the fundamental denial of due process (right to counsel and right to present evidence on one's behalf) that he claims resulted from the IJ's denial of a change in venue.

8

Fifth Amendment due process right to counsel in deportation proceedings where counsel has been obtained). To prevail on a procedural due process challenge, the petitioner must show that he was substantially prejudiced by the violation. Ka Fung Chan v. I.N.S., 634 F.2d 248, 258 (5th Cir. Jan. 1981); Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1263 (11th Cir. 2003).

Frech argues that the IJ denied him due process of law by (1) failing to consider any of the factors that weighed in favor of changing venue, as required by BIA precedent; (2) denying him the right to the counsel of his choice; (3) preventing him from presenting witnesses who would have testified as to Frech's good character but whom he could not afford to bring to Miami; and (4) requiring him (and his wife) to travel to Miami in order to participate in the proceedings, thereby causing him to incur expenses that precluded him from being able to retain counsel there. Frech maintains that had he been represented by counsel at the hearing, his attorney would have presented argument and evidence in support of the waivers of inadmissibility. He further maintains that he would have presented additional witnesses on his behalf had his hearing taken place in Houston, where all the witnesses resided. Lastly, Frech argues that the IJ applied the wrong legal standard in assessing the waivers of inadmissibility by focusing insufficiently on the hardship to the qualifying relative for waiver purposes, Frech's wife.

While deprivation of the right to counsel or the ability to present evidence on

one's behalf in a removal proceeding would, under certain circumstances, constitute a due process violation, Frech has not shown that he was substantially prejudiced by any due process violation in this case. As to the right to counsel, the record shows that Frech discharged his Texas attorney weeks before the final merits hearing. There is no indication that the dismissal of the attorney was related to the location of the hearing, nor that Frech sought a continuance thereafter for the purpose of obtaining another attorney. As to the presentation of evidence, there is no indication that the additional witnesses would have offered testimony related to the "extreme hardship" inquiry relevant to the granting of waivers of inadmissibility.[9]

We further conclude that the IJ applied the correct legal standard in evaluating Frech's application for waivers. Although the IJ considered the hardship to Frech (which is not a basis for waiver under the relevant statutory

---

[9] In a supplemental filing, Frech draws the Court's attention to our opinion in Zafar v. U.S. Att'y Gen., 461 F.3d 1357, 1360-61 (11th Cir. 2006), where we held that although INA § 242(a)(2)(B)(ii) precluded our review of matters specifically entrusted to the discretion of the Attorney General under that subchapter, we retained jurisdiction to review the denial of a continuance for abuse of discretion because the authority to grant or deny the motion derived instead from regulations. We similarly retain jurisdiction to review a denial of change in venue because the authority to grant or deny such a motion is also derived from regulations, see 8 C.F.R. § 1003.20. In this case, although the IJ failed to consider several relevant factors (particularly those weighing heavily in favor of the motion) before ruling on the motion to change venue, as required by BIA precedent, Frech still cannot prevail because he has not established that he was prejudiced by the denial of the motion. See, e.g., Monter v. Gonzales, 430 F.3d 546, 558-60 (2d Cir. 2005) (reversing denial of change of venue where nearly all relevant factors weighed heavily in petitioner's favor and petitioner established prejudice flowing from the denial of the motion).

10

provisions), the record is clear that the IJ also considered the hardships to Mrs. Frech.

**Petition DENIED**.