[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15798
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A098-858-821,
A098-858-822

MEILINA KRISNAWATI,
IRON SITUMORANG,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 1, 2009)

Before DUBINA, Chief Judge, TJOFLAT and WILSON, Circuit Judges.

PER CURIAM:

Meilina Krisnawati and Iron Situmorang (collectively, "Petitioners"), both

natives and citizens of Indonesia, through counsel, seek review of the decision of the Board of Immigration Appeals ("BIA") affirming the order of the Immigration Judge ("IJ") denying their application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3); 8 C.F.R. § 208.16(b).[1]

On appeal, the Petitioners argue that the IJ violated their due process rights by admitting an Asylum Officer's notes and Assessment to Refer into the record without offering them an opportunity to object, and that the BIA erred in upholding the violation. They note that the Executive Office for Immigration Review's Operating Policy and Procedures Memorandum ("OPPM") specifically prohibits the admission of documents containing an asylum officer's credibility findings. They further argue that they were not given a reasonable opportunity to review the documents, confront and cross-examine the witnesses presented, or object to the documents' admission. The Petitioners assert that they cannot show how the documents prejudiced them because the IJ failed to offer a "cogent or reasoned analysis" for the denial of asylum relief but, nevertheless, the admission should be considered presumptively prejudicial in light of the OPPM.

"We review constitutional challenges *de novo*." *Lonyem v. U.S. Att'y Gen.*,

---

[1] When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case, the BIA issued its own decision.

352 F.3d 1338, 1341 (11th Cir. 2003) (per curiam). The Fifth Amendment entitles petitioners in removal proceedings to due process of the law. *Frech v. U.S. Att'y Gen.*, 491 F.3d 1277, 1281 (11th Cir. 2007). "To prevail on a procedural due process challenge, the petitioner must show that he was substantially prejudiced by the violation." *Id.* An alien can demonstrate substantial prejudice by showing that, absent the due process violation, "the outcome would have been different." *Ibrahim v. INS*, 821 F.2d 1547, 1550 (11th Cir. 1987).

According to the OPPM, a document containing reference to an asylum officer's credibility findings should not be filed with the immigration court. *See* OPPM 00-01, XII.C, 2000 WL 34444281 (Aug. 4, 2000) ("Under no circumstances should any document containing reference to INS credibility findings be filed with the Court."). While we have not addressed the issue, the Ninth Circuit has held that the such internal immigration operating instructions do not have the force of law. *Romeiro De Silva v. Smith*, 773 F.2d 1021, 1024 (9th Cir. 1985); *see also Prokopenko v. Ashcroft*, 372 F.3d 941, 944 (8th Cir. 2004) (addressing OPPM 00-01 regarding credibility findings and finding that "[i]t is doubtful that an internal agency memorandum of this sort could confer substantive legal benefits upon aliens or bind the [INS]").

Moreover, even assuming that the IJ violated the OPPM and erred in admitting the Asylum Officer's notes and Assessment to Refer, the Petitioners' due

3

process rights were not violated by the admission because the documents did not change the outcome of the case. The only credibility finding contained in the documents was favorable to the Petitioners insofar as the IJ only cited them to find that extraordinary circumstances excused the Petitioners' untimely asylum application. As such, the admission of the documents helped the Petitioners, not prejudiced them.

The Petitioners next argue that they demonstrated a well-founded fear of future persecution in Indonesia as Christians because the reports in the record indicate that religious violence by Muslims against Christians is still prevalent in Indonesia, and the Indonesian Government cannot or will not enforce the law. They argue that they would more likely than not be persecuted in Indonesia in light of the numerous articles discussing violent attacks and the fact that Christians are easily identifiable because religion is labeled on state-issued identification cards. They also contend that the BIA placed undue reliance on the fact that Krisnawati voluntarily returned to Indonesia after studying in Australia for several years because her return was brief and necessary. They further assert that they also met the higher standard for withholding of removal because they would be easily identified as Christians with western influence given their time in the United States and the fact that their son is a United States citizen. Finally, they argue that the IJ erred in determining that Krisnawati's testimony was not credible because the IJ

did not support his credibility determination with specific reasons or substantial evidence.

We review the BIA's legal determinations *de novo*. *Nreka v. U.S. Att'y Gen.*, 408 F.3d 1361, 1368 (11th Cir. 2005). The BIA's factual determinations are reviewed under the substantial evidence test, and we will affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1006 (11th Cir. 2008) (internal quotation marks and citation omitted). "We will not reverse unless the record compels a contrary conclusion." *Id.*

An alien who arrives in or is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). To be eligible for asylum, the applicant must prove that he or she is a "refugee" within the meaning of the INA. 8 U.S.C. § 1158(b)(1)(A). To establish refugee status, the applicant must show, with specific and credible evidence, either past persecution or a "well-founded fear" of future persecution on account of, *inter alia*, religion. 8 U.S.C. § 1101(a)(42)(A); *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007). Although the INA does not define persecution for purposes of refugee status, we have noted that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005)

(per curiam) (internal quotation marks and citation omitted).

Here, the Petitioners assert a fear of future persecution. With respect to a well-founded fear of future persecution, "[t]he applicant may prove eligibility by demonstrating (1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *De Santamaria*, 525 F.3d at 1007. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution." *Id.* (internal quotation marks and citation omitted). "The objective prong can be fulfilled by establishing that the applicant has a good reason to fear future persecution." *Id.* (internal quotation marks and citation omitted). Finally, an applicant who fails to establish eligibility for asylum on the merits "necessarily fails" to establish eligibility for withholding of removal. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

As an initial matter, we will not review the IJ's adverse credibility finding because the BIA not only declined to address it but assumed that Krisnawati testified credibly. *See Al Najjar*, 257 F.3d at 1284.

We conclude that substantial evidence supports the BIA's conclusion that the Petitioners failed to establish eligibility for asylum because they did not establish a well-founded fear of future persecution. The fact that Krisnawati voluntarily returned to Indonesia for a month before traveling to the United States

6

and that her parents and siblings have remained in Indonesia without incident supports our conclusion. *See De Santamaria*, 525 F.3d at 1011 ("An asylum applicant's voluntary return to his or her home country is a relevant consideration in determining whether the asylum applicant has a well-founded fear of future persecution."); *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006) (per curiam) (discussing future persecution and noting that applicant's family "remained unharmed in the region of [the country] where [the applicant] allegedly was threatened"). At best, the reports submitted by the Petitioners, some of which recounted religious tension, violence, and church closings and others of which noted a high degree of religious freedom and even a decrease in religious violence since 2002, present a mixed picture in terms of the persecution of Christians in Indonesia. Such evidence does not compel a conclusion that the Petitioners would be persecuted if they returned to Indonesia. Lastly, because the Petitioners did not establish eligibility for asylum, they also failed to establish eligibility for withholding of removal. See *Forgue*, 401 F.3d at 1288 n.4 Accordingly, we deny the petition.

**PETITION DENIED.**